## DUNLAP v. GARLINGTON.

Testator by his will gave to trustees real and personal property "in trust for the sole and separate use and benefit of my daughter N. and the lawful issue of her body . . . to be and remain in the uninterrupted possession of my daughter N., and should my daughter die leaving no lawful issue of her body, it is my will and desire that the aforesaid property, both real and personal, revert back to my estate." By a second clause, testator gave certain other real and personal property to his wife for life, "and at her death to be sold, and the money arising therefrom be equally divided among all my children, share and share alike, the grandchildren to represent the interest of their deceased parent, and that portion which may be coming to such child, whose interest is secured in trust, I hereby direct my executors to pay over the same to their trustee." The property given to the widow was sold after her death, and N's share was received by her trustee, including two notes on one G. This was prior to 1868. Afterwards N's husband purchased a house and lot from G., and paid for it by a credit on one of these notes, and he then gave this house and lot to his daughter E., and then N. died intestate. *Held,*

1. That E. was entitled to the house and lot, and that the balance due on the two notes passed to the husband and children of N., as her distributees, and not to the heirs of her body.

2. The real estate sold under the directions of the will must be regarded as personalty.

3. This property disposed of by the second clause was not governed by the terms of the first clause, and even if it were, the words used are not sufficient to create a life estate only in N. or even an estate over which her husband could have no control.

---

Before HUDSON, J., Laurens, February, 1881.

In this case the Honorable T. B. Fraser, Circuit Judge, sat in the place of the Chief Justice, who had been of counsel in the cause.

Action by Margaret H. Dunlap, S. E. Dunlap and Hattie Teague against H. W. Garlington, as trustee of Nancy Miller, Eloise W. Shell, Chancy M. Miller and W. D. Black. The opinion states the facts of the case. The Circuit decree, after a statement of those same facts, was as follows:

The property in controversy is: 1st. The town lot which the plaintiffs claim was bought and paid for with funds belonging to the trust estate of Nancy Miller, which is, there-

fore, trust property, and is now divisible alone among *the heirs of the body* of Nancy. 2d. The money in the hands of the Clerk arising from the sale of the property of John Garlington, applicable to the two notes aforesaid, which John Garlington gave to Henry W. Garlington, as trustee, for his part of the purchase of the property devised and bequeathed to the testator's widow, Margaret, and which, by direction of the will, was sold after the widow's death. This money, as well as these two notes, are claimed by *the heirs of the body* of Nancy Miller. 3d. Whatever of the trust estate that may yet remain in the hands of H. W. Garlington, is likewise so claimed.

All this C. M. Miller denies, and claims that all that came as personalty under the will to his wife, Nancy, was hers absolutely, and that he is entitled absolutely to all of the same which, in her lifetime, he reduced into possession, and that which he did not reduce to possession constitutes her intestate estate, of which he is entitled to one third, and the children the balance.

The whole controversy is to be determined by a construction of the two clauses of the will given in the complaint and quoted above. Under the devise and bequest to Nancy Dunlap (Miller), it is clear to my mind that she took a fee conditional in the realty and an absolute estate in the personalty. In a deed or will that language which will create a fee conditional in realty will create an absolute estate in personalty, for the simple reason that perpetuity will never be tolerated in perishable (personal) property. Nor does the fact that the conveyance is to a trustee alter the case, unless there be some special duty in and about the personal property enjoined upon the trustee in its management and final disposition, which renders it necessary that the estate and title should abide in him. In this case there is nothing of the sort, but, on the contrary, it is expressly provided by the testator that both the real and personal estate shall be uninterruptedly possessed, used, enjoyed by his daughter. I think it clear that she took the personalty absolutely and free from the trust and from the attempted limitation to the heirs of her body. *Henry* v. *Felder*, 2 *McC. Ch.* 325; *Addison* v. *Addison*, 9 *Rich. Eq.* 58.

Of the property given to Nancy, as I understand from the pleadings and from counsel, there is none in controversy, but the contest is over what fell to her share of the remainder of the gift to her mother, which at her death was, by direction of the will, sold and converted into money. Her share of this was likewise directed to be paid to her trustee. The plaintiffs contend that when paid to the trustee it was 'to be held by him under the same trusts and limitations as were imposed upon the devise and bequest to Nancy in the previous clause. The testator is silent on this point. He simply directs it paid to her trustee. But grant that the intention was as the plaintiffs contend, and what is the effect? Realty directed to be sold and converted into money becomes personalty, and is to be so treated. Clearly, then, all her share of the proceeds of the remainder of her mother's life estate must be classed as personalty in the hands of the trustee, and as such it vested in Nancy absolutely, as did the personalty given immediately to her.

The two notes in controversy, therefore, became absolutely the property of Nancy Miller. If before the adoption of the Constitution of 1868, C. M. Miller, her husband, had reduced these notes into his possession, they would have been absolutely his; but this I do not think he did. From the evidence, however, I am satisfied that from 1850, when he married Nancy, until her death in 1872, he was allowed by her to manage and use her personal property, and enjoy the income as he pleased; and that when he bought the town lot and took titles to himself, he did not act as trustee nor as agent of his wife, but for himself, and that he paid for the place by the credit on the notes with her full knowledge and consent, using the money as his own. *Reeder & Davis* v. *Flinn,* 6 *S. C.* 216 and authorities there cited, furnish sufficient to sustain this view of the law in connection with the facts of this case. The plaintiffs are, therefore, entitled to no share nor interest in this property. The balance of the two notes and what money may be in the hands of the trustee, H. W. Garlington, I hold to be the intestate estate of Nancy Miller, and distributable amongst her children and husband—*i.e.,* her heirs at

law and distributees according to the statute—and not amongst the heirs of her body only; and *it is so ordered, adjudged and decreed;* and that the complaint in so far as it seeks to sell or partition the town lot sold by C. M. Miller to Eloise Shell be dismissed.

The plaintiffs brought the case to this Court upon the following exceptions:

1. That his Honor erred, it is respectfully submitted, in deciding that the property involved in this suit should be distributed among the heirs at law of Nancy Miller, and not the heirs of her body.

2. His Honor erred, it is respectfully submitted, in holding that C. M. Miller purchased and held the house and lot as his property by the consent and approbation of Mrs. Miller, when it was in testimony that he was at that time *de facto* trustee for her and used her trust funds in the purchase, and some of the principal at that; and to allow him to hold the property is a fraud on the rights of the heirs of her body.

3. His Honor erred further, in holding that Nancy Miller took an absolute estate in the personal property willed by her father.

Messrs. *Pope & Watts*, for appellants.

Messrs. *J. W. Ferguson, Holmes & Simpson*, contra.

October 4, 1882. The opinion of the Court was delivered by

Mr. Justice Fraser.—William Dunlap departed this life in 1839, leaving in force a will which was duly admitted to probate. He left surviving him his widow, a daughter Nancy, and other children. Nancy intermarried with Ewell Black, and of this marriage were born several children, the plaintiffs, and the defendant W. D. Black. After the death of Ewell Black, Nancy intermarried with the defendant Chancy M. Miller, and to them was born one child, the defendant Eloise W. Shell. Nancy died in 1872, all her children above named and her husband, Chancy M. Miller, surviving her.

The will of William Dunlap contains two clauses under which the controversy in this case arises.    In one clause he gives to certain trustees real and personal property " in trust for the sole and separate use and benefit of my daughter Nancy and the lawful issue of her body," and after describing the property adds: "It is my will and desire that all the aforesaid property be and remain in the uninterrupted possession of my daughter Nancy; and should my daughter die leaving no lawful issue of her body, it is my will and desire that the aforesaid property, both real and personal, revert back to my estate."

In another clause he gives certain real and personal property to his wife for life, and at her death as follows: " It is my will and pleasure that all of the property herein bequeathed to my wife be and remain in her possession during her natural life, and at her death to be sold and the money arising therefrom be equally divided among all my children, share and share alike, the grandchildren to represent the interest of their deceased parent, and that portion which may be coming to such child, whose interest is secured in trust, I hereby direct my executors to pay over the same to their trustees."

John Garlington alone qualified as executor of the will, and H. W. Garlington alone of the persons named assumed the trust in favor of Nancy.   The property, which passed to the widow of William Dunlap under the second of the above clauses, was sold at her death by the executor, and H. W. Garlington, as trustee for Nancy, received her share, and as a part thereof two sealed notes executed to him by John Garlington, one of May 31, 1862, for $3372.56, and one of March 4, 1863, for $5147.41, which were secured by a mortgage of real estate.   After the death of John Garlington, the executor, his executors sold a part of his estate, and Chancy M. Miller, the defendant, purchased a lot of land known as the " Shockley house and lot," and paid for it by putting a credit on the note for $5147.41.   This transaction was in January, 1870, and the amount of the credit given was $2020, being $82.91 in excess of the interest then due thereon.   The balance of said two notes was established in a proceeding to settle

the estate of John Garlington. The credit of $2020 on said note was signed by C. M. Miller, and the title to the Shockley place was made to him. This lot of land he subsequently conveyed to the defendant Eloise W. Shell, his daughter.

. This Court concurs with the master and the Circuit Judge in the findings of fact. Chancy M. Miller at no time was trustee or assumed to act as trustee in reference to this property, and his dealings in regard to it must be construed with reference to his marital rights.

The appellants claim that this Shockley place and the balance of the two notes are distributable amongst the *issue* of Nancy. The Circuit Judge holds that plaintiffs, appellants, are entitled to no interest in the Shockley place, and "that the balance of the two notes is distributable amongst her children and her husband—*i.e.*, her heirs at law and distributees, according to the Statute—and not amongst the heirs of her body." If the property in dispute is controlled by the terms of the first of the above recited clauses of the will, and if it should be held that the same was in trust for Nancy during her life, with valid remainders over, then it is clear that so much of the $2020 paid for the Shockley place as was interest on the note on which that amount was credited was received by the husband with *the knowledge and consent of the wife*, and became absolutely his property. *Hill Trust.* 425; *Charles* v. *Coker*, 2 *S. C.* 136; *Reeder & Davis* v. *Flinn*, 6 *S. C.* 216.

All this property, however, must be regarded as personalty, the real estate having been sold under the directions of the will.

The words create an executed trust, and Nancy would have taken in real estate a fee conditional, and "words which convey only a life estate or a conditional fee in land gives an absolute estate in personal property." *Carr* v. *Porter*, 1 *McC. Ch.* 60; *Bedon* v. *Bedon*, 2 *Bail.* 248; *Daintry* v. *Daintry*, 6 *T. R.* 307; *Henry* v. *Felder*, 2 *McC. Ch.* 339; *Addison* v. *Addison*, 9 *Rich. Eq.* 68.

The second of the above clauses, however, by which this property was conveyed, does not expressly refer to the first, and the

only circumstance which indicates that they are to be construed together, and the terms of the first to control the gifts under the second, is the direction in the second to pay over certain shares to trustees, who are named in the first clause. This of itself would not be sufficient to annex the terms of the gift under the first clause to the gift under the second, where the second is itself silent. It is by no means clear, however, that they would be consistent with each other even if the limitations claimed to have been created by the first are held to be valid. Under the first the limitations would have been to "issue of her body," a term of very much larger import, and including classes of persons not embraced by the word "grandchildren," to whom the property was given under the second clause in the event of Nancy's death before her mother.

The true construction of this second clause is that the gift is to Nancy absolutely, and if she should die before her mother, whose death is the period of distribution, then her children, the grandchildren of testator, are substituted in her place, and they take absolutely. Issue are not necessarily grandchildren.

The words used are not sufficient to create a life estate only in Nancy, or even an estate over which her husband could have no control. There should have been unequivocal evidence of "an intention to exclude the husband from all control. The mere gift to a *trustee* is not enough." *Perry, Trusts,* §§ 648, 649.

This Court therefore concurs with the Circuit Judge in the conclusion that the complaint be dismissed so far as it seeks a sale or partition of the town lot sold by C. M. Miller to Eloise W. Shell, and in the judgment of the Circuit Court as to the balance of the funds. If an administrator of Nancy Miller, deceased, should be a necessary party, the proper order can be made by the Circuit Court before the distribution of the fund.

It is therefore ordered and adjudged that the exceptions be overruled, the judgment of the Circuit Court affirmed, and the appeal dismissed.